1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROBERT J. HESS, | ) | No. CV 14-8103 FFM |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## I.  INTRODUCTION

Plaintiff Robert J. Hess ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration denying his application for Disability Insurance Benefits.  Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of the undersigned United States Magistrate Judge.  (Dkt. Nos. 18, 21).  Pursuant to the Court's October 21, 2014 Procedural Order, (Dkt. No. 7), on May 15, 2015, the parties filed a Joint Stipulation ("Joint Stip.") detailing each party's arguments and authorities, (Dkt. No. 14).  The Court has reviewed the Joint Stipulation and the administrative record ("A.R."), filed by defendant on February 23,

2015, (Dkt. No. 13).  For the reasons stated below, the decision of the Commissioner is affirmed.

## II.    PRIOR PROCEEDINGS

On August 29, 2006, Plaintiff applied for Disability Insurance Benefits, asserting disability since April 1, 2005.  (A.R. 76–87).  The Administrative Law Judge ("ALJ"), James D. Goodman, examined the records and heard testimony from Plaintiff on May 19, 2008.  (A.R. at 24–56).  Plaintiff testified that he had previously suffered several shoulder injuries and surgeries, and also suffers from continuous pain in his back.  (A.R. 34–36, 50, 54–56).  Additionally, Plaintiff treats the pain in his back with medication and has undergone epidural shots.  (A.R. 47).  Plaintiff claimed that he sometimes suffers from pain so severe that he cannot get off the ground or out of bed for multiple days in a row.  (A.R. 50).  He further testified that he does not receive any treatment for his back, apart from pain medications, because he does not have insurance and he has an ongoing worker's compensation claim.  (A.R. 47).

After the hearing, the ALJ submitted written interrogatories to a vocational expert ("VE"), Martin Brodwin, and agreed to submit cross-interrogatories to the VE on Plaintiff's behalf.  (A.R. 173).  However, although Plaintiff submitted cross-interrogatories, they were apparently never provided to the VE.  (A.R 950–51).  The VE replied to the ALJ's interrogatories on July 30, 2008.  (A.R. 179).

On December 24, 2008, the ALJ denied Plaintiff benefits in a written decision.  (A.R. 4–19).  Based on the ALJ's residual functional capacity ("RFC") determination, and the testimony of the VE, the ALJ found that Plaintiff was capable of performing work as a production packer, assembler, and gluer/labler.  (A.R. 18).  The Appeals Council denied review of the ALJ's decision on July 1, 2009.  (A.R. 1–3).

On August 17, 2009, Plaintiff commenced an action in this Court, seeking to

/ / /

2

overturn the Commissioner's denial of benefits.[1]  The Court reversed the administrative decision, finding that the ALJ's failure to submit Plaintiff's cross-interrogatories to the VE created uncertainty about whether the VE considered Plaintiff's reaching limitations. (A.R. 950–51).  Accordingly, the Court remanded the matter to ascertain which jobs, if any, were available to Plaintiff, given his reaching limitation.  (A.R. 951).  The Court found error in neither the ALJ's treatment of the medical opinion evidence, (A.R. 948–50), nor his assessment of Plaintiff's credibility.  (A.R. 951–52).

On October 4, 2011, the ALJ held a second administrative hearing, at which time he heard testimony solely from the VE.  (A.R. 875–89).  At this hearing, the VE testified on cross-examination that none of the jobs cited in the interrogatories would require overhead reaching.  (A.R. 880).  Furthermore, the VE testified that a person who is prohibited from lifting more than twenty-five pounds; cannot perform repetitive overhead work; and cannot sit or stand for prolonged periods of time, could still perform the work identified in his answers to the interrogatories.  (A.R. 883).

On March 8, 2012, the ALJ once again denied Plaintiff benefits in a written decision.  (A.R. 957–84).  While the ALJ found that Plaintiff suffered from numerous severe impairments, including degenerative disc disease, he determined that Plaintiff did not have an impairment or combination of impairments that met or equaled a listing in 20 C.F.R. § 404, subpt. P, app. 1.  (A.R. 963–64).  Furthermore, the ALJ discerned that Plaintiff possessed the residual functional capacity ("RFC") to:

> lift and carry twenty pounds occasionally and ten pounds frequently . . . stand and walk up to six hours and sit up to six hours, cumulatively, in an eight-hour workday . . . occasionally climb, kneel, bend, stoop, and crawl; . . . occasionally use his right upper extremity above the shoulder level . . . perform simple, routine and repetitive work with the ability to carry out detailed, but uninvolved instructions . . . perform complex technical work only occasionally . . . work at a stress level of three to four on a scale of one

---

[1]  The Court takes judicial notice of the prior decision rendered by this Court, available on the PACER database.  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (court may take judicial notice of court records).

3

to ten, where ten is described as the work of an air traffic controller as this occupation exists in the national economy and one is described as a night dishwasher as this occupation exists in the national economy.

(A.R. 965–66).

In determining Plaintiff's RFC, the ALJ accepted the findings of the stage agency physician, Dr. Bayar; a consultative examiner, Dr. Sedgh; and another consultative examiner, Dr. Moazzaz. (A.R. 966). Conversely, the ALJ rejected the medical opinion of Plaintiff's treating physician, Dr. Vernon Williams. (A.R. 968–70). Additionally, the ALJ found that Plaintiff's testimony regarding his pain and other limitations was less than fully credible. (A.R. 974–75).

Based on Plaintiff's RFC and the testimony of the VE, the ALJ determined that Plaintiff could perform work as a product packer, assembler, gluer/labeler, product folder, product inspector, and hand cutter. (A.R. 977). Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act. (A.R. 977–78).

Plaintiff initiated the instant proceedings on October 20, 2014. (Dkt. No. 1).

### III.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this court reviews the Administration's decisions to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used proper legal standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (citations omitted). "Substantial evidence is more than a scintilla, but less than a preponderance." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998) (citation omitted). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." *Auckland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation marks omitted).

If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, the Court may not substitute its judgment for that of the ALJ. *Robbins v. Soc.*

4

*Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citing *Flatten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)).  However, even if substantial evidence exists in the record to support the Commissioner's decision, the decision must be reversed if the proper legal standard was not applied.  *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1014–15 (9th Cir. 2003); *see also Smolen*, 80 F.3d at 1279.

## IV.   PLAINTIFF'S CONTENTIONS

Plaintiff raises the following issues:

1.   Whether the ALJ's RFC assessment is supported by substantial evidence; and

2.   Whether the ALJ's credibility determination is supported by substantial evidence.

(Joint Stip. at 5).

## V.   DISCUSSION

After considering the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material legal error.

A.   The ALJ Properly Assessed Plaintiff's Residual Functional Capacity

Plaintiff's argument that the ALJ's RFC determination is unsupported by substantial evidence appears largely based upon his contention that the ALJ improperly rejected the opinion of his treating physician, Dr. Williams.  (Joint Stip. 5–12).  As a result, the Court will analyze this claim under the corresponding standard.

Ordinarily, a treating physician's opinion is entitled to great weight.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527.  "However, the

5

1  opinion of the treating physician is not necessarily conclusive as to either the physical
2  condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*,
3  169 F.3d 595, 600 (9th Cir. 1999) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th
4  Cir. 1989)).  As a result, an ALJ may reject the contradicted opinion of a treating
5  physician by "providing 'specific and legitimate reasons' supported by substantial
6  evidence in the record for doing so."  *Lester*, 81 F.3d at 830 (quoting *Murray v. Heckler*,
7  722 F.2d 499, 502 (9th Cir. 1983)).

8        1.     Opinion of Dr. Williams

9                i.     *Brief, Conclusory, and Unsupported by Clinical Findings*

10        An ALJ may reject the opinion of a treating physician if the physician's opinion is
11  "conclusory and brief and unsupported by clinical findings."  *Tonapetyan v. Halter*, 242
12  F.3d 1144, 1149 (9th Cir. 2001) (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th
13  Cir. 1992)).   Here, the ALJ found that Dr. Williams' opinion about Plaintiff's physical
14  limitations should be rejected because Dr. Williams did not support his determination
15  with clinical findings.  (A.R. 970).  This conclusion is supported by the record.  On
16  September 21, 2011, Dr. Williams opined that Plaintiff should not lift more than five
17  pounds, bend or rotate repeatedly, or sit or stand for a prolonged period.[2]  (A.R. 1600).
18  However, Dr. Williams did not base this conclusion on any physical examination.
19  Indeed, the report containing this opinion explicitly notes that Dr. Williams did not
20  examine Plaintiff during that clinical visit.  (*Id.*)  The report also lacks any indication as
21  to which medical evidence Dr. Williams reviewed before making his decision.
22  Accordingly, the ALJ's conclusion that Dr. Williams' opinion was unsupported by
23  clinical findings is supported by substantial evidence.

24        Furthermore, although the standard articulated by the Ninth Circuit states that
25  ALJs may reject the opinions of treating physicians that are "conclusory *and* brief *and*

---

27        [2] Because Plaintiff does not argue that the ALJ erred in rejecting Dr. Williams'
     earlier determination that Plaintiff was "temporarily totally disabled," (A.R. 775–93), the
28  Court does not address that finding.

unsupported by clinical findings," *Tonapetyan*, 242 F.3d at 1149 (emphasis added), the Court is satisfied with the ALJ's reasoning in this case.  When reviewing an ALJ's decision, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755 (finding that specific and mechanical incantations are not required for the Court to discern why an ALJ rejected a physician's opinion).  Accordingly, the Court may permissibly infer that the ALJ also found Dr. Williams' report to be conclusory and brief.  An opinion or determination that stands alone, without any supporting facts is, by definition, "conclusory."  *See* Merriam-Webster's Collegiate Dictionary 239 (10th ed. 2001) (conclusory defined as "consisting of or relating to a conclusion or assertion for which no supporting evidence is offered").  Finally, while the ALJ did not make a written determination that Dr. Williams' report was brief, the Court is permitted to infer that he noticed the length of the report as he was reading it.  Accordingly, the Court is satisfied with the ALJ's basis for rejecting the opinion of Dr. Williams.

Petitioner argues that "if the ALJ believed that Dr. Williams' opinion was inadequate, incomplete or unsupported by the record[,] he should have recontacted [Dr. Williams]."  (Joint Stip. 11).  However, ALJs are only required to conduct their own inquiries "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) (citation omitted).  Dr. Williams' report was not ambiguous – it unequivocally stated his opinion of Plaintiff's physical limitations.  Additionally, that the report was merely inadequate to *support* a finding of disability does not also mean that it was "inadequate to allow for proper evaluation of the evidence."  *See Mayes*, 276 F.3d at 459–60.  "Rejection of the treating physician's opinion on ability to perform any remunerative work does not by itself trigger a duty to contact the physician for more explanation."  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)).  Moreover, logic militates against concluding that the Ninth Circuit would articulate a rule allowing ALJs to reject treating physicians' opinions

7

based on their brevity and conclusory natures, only to also mandate that ALJs augment

such opinions first.

### ii.    *Objective Medical Evidence*

Finally, the Court declines to consider whether the ALJ erred by rejecting Dr. Williams' opinion as unsupported by the objective medical evidence.  It is the ALJ's role to resolve conflicting medical evidence.  *See Thomas v. Barnhart*, 278 F.3d 947, 956–57. As discussed below, the ALJ gave permissible reasons for accepting the opinion of Dr. Moazzaz while rejecting the opinion of Dr. Williams.  Accordingly, the Court may not disturb the ALJ's finding solely on the basis that Dr. Williams' finding was also an acceptable interpretation of the medical evidence.  *See Robbins*, 466 F.3d at 882 (citation omitted).

### 2.    Opinion of Dr. Moazzaz

Dr. Payam Moazzaz, a consultative physician, examined Plaintiff on November 19, 2011.  (A.R. 1576–88).  Prior to the examination, Dr. Moazzaz reviewed various medical records including: (1) an MR arthrogram of Plaintiff's left shoulder taken on August 19, 2011; (2) an MRI report of Plaintiff's lumbar spine dated April 6, 2009; and (3) an evaluation from the Kerlan Jobe clinic from May 3, 2010.  (A.R. 1576).  At the examination, Dr. Moazzaz performed various diagnostic tests on Plaintiff in order to evaluate Plaintiff's physical limitations.  The results of these tests are well documented in the administrative record.  (A.R. 1576–82).  The ALJ relied on Dr. Moazzaz's opinion in determining Plaintiff's RFC.  (A.R. 966).

Plaintiff argues that Dr. Moazzaz's opinion cannot constitute substantial evidence to support the ALJ's non-disability determination because Dr. Moazzaz and Dr. Williams both examined the same evidence, but came to different conclusions.  (Joint Stip. 8–9).  Plaintiff is correct that an ALJ may not reject the opinion of a treating physician merely because an examining physician, after examining the same evidence, came to a different conclusion.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) ("When an examining physician relies on the same clinical findings as a treating

8

1   physician, but differs only in his or her conclusions, the conclusions of the examining
2   physician are not substantial evidence." (internal quotation marks omitted)).  However,
3   "when an examining physician provides independent clinical findings that differ from
4   the findings of the treating physician, such findings are substantial evidence."  *Id.*
5   (internal quotation marks omitted).

6        The opinions of Dr. Moazzaz and Dr. Williams rely on different clinical findings.
7   Dr. Moazzaz made his findings after performing a battery of clinical tests during the
8   examination.  (A.R. 1579–81).  Furthermore, Dr. Moazzaz's examination of Plaintiff
9   revealed a negative straight leg raise test and intact rotator cuff strength.  (A.R. 1579–
10  80).  Conversely, Dr. Williams' report affirmatively states that he did not perform a
11  physical examination on the day he rendered his opinion.  Indeed, Dr. Williams entirely
12  failed to state which clinical findings he viewed and relied on when rendering his
13  opinion, whereas Dr. Moazzaz clearly indicated the medical evidence that he considered
14  to arrive at his conclusion.  As a result, the ALJ did not err in crediting Dr. Moazzaz's
15  opinion while rejecting that of Dr. Williams.

16       The Court is also unpersuaded by Plaintiff's argument that Dr. Moazzaz only
17  reviewed a "select few" medical records chosen by Defendant, thereby entitling his
18  medical opinion to less weight.  (Joint Stip. 8).  First, Dr. Moazzaz reviewed the report
19  of Dr. Reisch, which summarized Plaintiff's injury and surgical histories through 2008.
20  (A.R. 1074–77, 1576).  Second, Dr. Moazzaz reviewed pertinent exam findings,
21  including the April 6, 2009, MRI that documented "severe degenerative changes in
22  Plaintiff's spine."  (A.R. 1576).  Finally, Dr. Moazzaz conducted his own clinical
23  examination of Plaintiff.  (A.R. 1576–82).  Accordingly, the Court finds that Dr.
24  Moazzaz's opinion is based upon a sufficient examination of Plaintiff's medical
25  impairments.  In any event, Plaintiff has not pointed to any evidence that Dr. Moazzaz
26  could have reviewed that might have altered his opinion.

27       Because he reviewed pertinent objective medical evidence and performed an
28  independent clinical evaluation of Plaintiff's limitations, Dr. Moazzaz's opinion may

9

1    constitute substantial evidence to support the ALJ's decision.  *Thomas*, 278 F.3d at 957

2    ("The opinions of non-treating . . . physicians may also serve as substantial evidence

3    when the opinions are consistent with independent clinical findings or other evidence in

4    the record." (citations omitted)).  The Court is unaware of any evidence in the record,

5    and Plaintiff does not point to any, that appears to show that the limitations ascribed by

6    Dr. Moazzaz are inconsistent with the objective medical evidence.[3]  Accordingly, Dr.

7    Moazzaz's opinion constitutes substantial evidence with which the ALJ permissibly

8    buttressed his non-disability determination.

9           3.       The ALJ's Errors In Determining Plaintiff's RFC Were Harmless

10     "[H]armless error principles apply in the Social Security . . . context."  *Molina v.*

11   *Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r Soc. Sec. Admin.*,

12   454 F.3d 1050, 1054 (9th Cir. 2006)).  An ALJ's error is harmless only when it is "clear

13   from the record that [the] ALJ's error was 'inconsequential to the ultimate nondisability

14   determination.'"  *Robbins*, 466 F.3d at 885 (quoting *Stout*, 454 F.3d at 1055–56).

15       Here, the ALJ erred in relying on the opinions of Dr. Bayar and Dr. Sedgh in

16   assessing Plaintiff's functional limitations.  The opinions of these doctors were rendered

17   far too long before the ALJ's second decision to be considered reliable medical sources,

18   especially since Plaintiff's medically determinable impairment was degenerative.

19   However, because the opinion of Dr. Moazzaz constituted substantial evidence for the

20   reasons discussed above, the ALJ's error was harmless.

21       Additionally, the ALJ impermissibly rejected Dr. Williams' opinion on the basis

22   that it was rendered after the expiration of Plaintiff's insured status.  *See Smith v. Bowen*,

23   849 F.2d 1222, 1225 (9th Cir. 1988) ("[I]t is clear that reports containing observations

24   made after the period for disability are relevant to assess the claimant's disability."

---

25        [3] Indeed, Dr. Moazzaz reviewed much of the evidence that Plaintiff claims

26   supports Dr. Williams' limitations.  (*Compare* A.R. 1576 *with* Joint Stip. 10–11).

     Additionally, those records that Dr. Moazzaz did not review do not clearly indicate that

27   Plaintiff's impairments are more severe than shown in the records reviewed by Dr.

28   Moazzaz.  (*Compare* A.R. 1559–60 *with* A.R. 848–49 *and* A.R. 1348).

1  (citation omitted)).  The rationale behind this rule is that "[i]t is obvious that medical
2  reports are inevitably rendered retrospectively and should not be disregarded solely on
3  that basis.  *Id.* (citing *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir.1985)).  However,
4  the ALJ did not reject Dr. Williams' opinion *solely* because it was provided after the
5  date last insured.  Rather, the ALJ provided other, legitimate reasons for discounting the
6  opinion, rendering this error harmless.

7  　　　　Based on the discussion above, it is "clear from the record that [the] ALJ's
8  error[s] [were] inconsequential to the ultimate nondisability determination." *Robbins*,
9  466 F.3d at 885 (internal quotation marks omitted).  Accordingly, the Court finds that
10  the errors were harmless.

11  B.　　The ALJ Properly Assessed Plaintiff's Credibility
12  　　　　Once a claimant produces medical evidence of an underlying impairment that is
13  reasonably likely to cause the alleged symptoms, medical findings are not required to
14  support their claimed severity.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).
15  However, an ALJ may reject a claimant's allegations upon:  (1) finding affirmative
16  evidence of malingering; or (2) providing clear and convincing reasons for so doing.
17  *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).

18  　　　　1.　　Inconsistent Statements Regarding Drug Use
19  　　　　ALJs are permitted to discredit a claimant's testimony about pain and other
20  symptoms if the claimant has made inconsistent statements regarding drug use.  *Thomas*,
21  278 F.3d at 959.  The ALJ correctly found that Plaintiff made such statements here.
22  (A.R. 973).  On several occasions, Plaintiff affirmatively denied using any drugs or illicit
23  substances, only to also test positive for marijuana use.  (A.R. 566, 688).  Additionally,
24  Plaintiff admitted smoking marijuana at least once per week in some instances, (A.R.
25  556, 1525, 1083), while outright denying use in others, (A.R. 1368, 598).  Accordingly,
26  the ALJ's findings constitute a clear and convincing reason to discredit Plaintiff's
27  testimony on this basis.
28  / / /

11

2.      Testimony Inconsistent with Prior Statements and Daily Activities

i.      *Prior Inconsistent Statements*

When assessing a claimant's credibility, an ALJ may discount a claimant's credibility based on "prior inconsistent statements concerning [the claimant's] symptoms." *Smolen*, 80 F.3d at 1284. The record supports the ALJ's determination that Plaintiff made inconsistent statements regarding his symptoms. At the hearing, Plaintiff claimed that disabling pain sometimes renders him completely unable to stand up. (A.R. 50). However, the record illustrates that Plaintiff repeatedly complained of pain that was only between "three" and "seven," on a scale where "ten" denotes the most severe pain. (A.R. 497, 624, 756, 764, 770, 774, 778, 782, 805, 1294–1306).[4] Additionally, aside from a single hospitalization for severe back pain, (A.R. 563–66), the record lacks any indication that Plaintiff reported to his physicians that he experienced pain of debilitating severity for multiple days in a row. This inconsistency was also a basis upon which the ALJ was permitted to rest his adverse credibility determination. *See Terrazas v. Comm'r Soc. Sec. Admin.*, 500 F. App'x 628, 630 (9th Cir. 2012) (affirming ALJ's credibility determination where claimant's testimony "was inconsistent with her statements to her doctors").

ii.      *Inconsistency with Daily Activities*

"Inconsistencies between a claimant's testimony and the claimant's reported activities" are also a permissible basis to discredit a claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1137–38 (9th Cir. 2014) (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)). At the hearing, Plaintiff's testimony indicated that he lives a sedentary lifestyle. (A.R. 54–55). However, Plaintiff stated to Dr. Williams that yard work causes his shoulder to hurt. (A.R. 1362). Accordingly, ALJ was permitted to

---

[4] While many of these records are fairly outdated, having been created from 2005 through 2009, the Court notes that the medical evidence during the relevant time period is limited, as there is a dearth of records regarding Plaintiff's pain from the time period between 2009 and 2011.

conclude that Plaintiff is capable of performing a higher level of activity than he claims.

Therefore, Plaintiff's prior inconsistent statements, as well as the inconsistencies between his daily activities and his statements, are clear and convincing reasons that the ALJ relied on to discredit Plaintiff's testimony regarding his subjective symptoms.

### 3.    Poor Effort During Examination

An ALJ may base an adverse credibility determination on evidence that a claimant displayed a lack of cooperation and poor effort during a consultative examination. *Tonapetyan*, 242 F.3d at 1148.  Here, the ALJ found evidence that Plaintiff exhibited "questionable cooperation and poor effort" and "[gave] evasive answers regarding his drug abuse" during consultative examinations.  (A.R. 975).  These findings are supported by the record.  During a 2011 psychological evaluation, the examining psychologist, Dr. Rosa Colonna, found that Plaintiff exhibited "poor effort" during psychological testing.  (A.R. 1594).  Additionally, during a 2008 psychiatric examination, Dr. Katalin Bassett found that Plaintiff was both "evasive" and showed "questionable cooperation."[5]  (A.R. 1088).

### 4.    Objective Medical Evidence

While Plaintiff is correct in his assertion that an ALJ may not discredit a claimant's testimony *solely* based on a lack of underlying objective medical evidence, the lack of objective medical evidence is a relevant factor in the credibility determination.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. §404.1529(c)(2)).  Accordingly, the ALJ was permitted to rely, in part, on the lack of objective medical evidence supporting Plaintiff's pain in rendering his adverse credibility determination.  Moreover, the ALJ buttressed his findings regarding the objective medical evidence with the interpretations of an examining physician, Dr.

---

[5] The evasiveness and poor cooperation were noted after Plaintiff stated that he "experimented with marijuana off and on."  (A.R. 1088).  Dr. Bassett also found that after making such statement, Plaintiff "was rather fuzzy about how much he uses or used."  (*Id.*)

Moazzaz.  (A.R. 966).  As a result, the ALJ did not err by relying on the lack of objective medical evidence to discount Plaintiff's credibility.

## VI.   CONCLUSION

The legally valid reasons given by the ALJ for discounting Plaintiff's credibility sufficiently allow the Court to conclude that the ALJ's credibility finding was based on permissible grounds.  The Court therefore defers to the ALJ's credibility determination. *See Lasich v. Astrue*, 252 F. App'x 823, 825 (9th Cir. 2007) (court will defer to ALJ's credibility determination when the proper process is used and proper reasons for the decision are provided); *accord Flaten*, 44 F.3d at 1464.  Furthermore, the Court finds that the ALJ's other findings are based on sufficient evidence and, therefore, "[the Court] may not substitute its judgment for that of the ALJ."  *Batson*, 359 F.3d at 1196.

## ORDER

For all of the foregoing reasons, the decision of the Administrative Law Judge is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: March 24, 2016

                              /S/FREDERICK F. MUMM
                         FREDERICK F. MUMM
                    UNITED STATES MAGISTRATE JUDGE

14